**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| JOSEPH SAVERI LAW FIRM, INC., et al., | * |
| Plaintiffs, | * |
| v. | *     Civil Action No.: RDB-17-1603 |
| MICHAEL E. CRIDEN, P.A., | * |
| d/b/a CRIDEN & LOVE, PA, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

This case involves a dispute over a purported referral fee agreement arising out of the

Titanium Dioxide Antitrust Litigation before this Court from 2010 to 2014. *In re Titanium*

*Dioxide Antitrust Litigation,* RDB-10–318 (D. Md.) ("TiO2 litigation"). Plaintiffs Joseph

Saveri and the Joseph Saveri Law Firm, Inc. (collectively, "plaintiffs" or "the Saveri

plaintiffs") served as Co-Lead Class Counsel in the TiO2 litigation and, following the $163.5

million settlement reached in that case, were awarded over $10 million in attorney's fees and

costs. (RDB-10-318, ECF No. 546.)[1] Defendant Michael E. Criden, P.A. d/b/a Criden &

Love, PA ("defendant" or "Criden & Love") also participated in the TiO2 litigation and was

awarded over $1 million in attorney's fees and costs. (*Id.*) Criden & Love has collected an

additional $1.7 million in referral fees paid by the law firms of Lieff, Cabraser, Heimann, and

---

[1] The parties' settlement allocated $54.5 million in attorney's fees. Per a separate agreement among class
counsel, actual distributions were based on a multiplier applied to each class firm's lodestar fee award.

Bernstein, LLP ("Lieff Cabraser") and Berger & Montague, PC, two other firms which served as Co-Lead Class Counsel in the TiO2 litigation. (ECF No. 14 at ¶ 25.)

The instant dispute arises out of Criden & Love's assertion that it is entitled to another 12.5% (twelve and one-half percent) referral fee from the Saveri plaintiffs based on Criden & Love's referral of plaintiff Isaac Industries, Inc. to Lieff Cabraser, Mr. Saveri's former law firm. In response to Criden & Love's demand, which included the filing of a since-abandoned arbitration proceeding in Florida, the Saveri plaintiffs have filed this action seeking a declaratory judgment that they are not obligated to pay to Criden & Love any referral fee.

Plaintiffs filed their complaint for declaratory relief in this Court following the dismissal of a nearly identical action in the United States District Court for the Northern District of California. *Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A.*, No. 14-CV-01740-EDL, 2015 WL 1029364 (N.D. Cal. Mar. 9, 2015) (hereinafter, "N.D. Cal. Op."). While the district court there ruled in favor of the Saveri plaintiffs' on all claims and counterclaims, the judgment was reversed on appeal by the United States Court of Appeals for the Ninth Circuit based on the district court's lack of personal jurisdiction over defendant Criden & Love. *Joseph Saveri Law Firm, Inc. v. Criden*, No. 15-15534, --- Fed. App'x ---, 2017 WL 2406736 (9th Cir. June 2, 2017). The Ninth Circuit did not address the district court's ruling on the merits of the case.

Now pending before this Court is the Saveri plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"). (ECF No. 13.) This Court conducted a hearing on Plaintiffs' Motion on August 31, 2017. (ECF No. 31.) For the reasons stated below,

Plaintiffs' Motion (ECF No. 13) is GRANTED, and Declaratory Judgment shall be ENTERED in favor of plaintiffs Joseph Saveri and the Joseph Saveri Law Firm, Inc. on all claims and counterclaims. The Saveri plaintiffs are not obligated to pay any referral fee to Criden & Love.

## PROCEDURAL BACKGROUND

In February 2014, Criden & Love initiated arbitration proceedings before the American Arbitration Association (AAA) against plaintiffs seeking over $1.2 in referral fees allegedly owed as a result of the TiO2 litigation. (ECF No. 1 at ¶ 27.) Plaintiffs objected to the AAA's jurisdiction, asserting that they are neither parties to nor the intended beneficiaries of the purported arbitration agreement. (*Id.* at ¶ 28.)

On April 15, 2014, plaintiffs filed a complaint in the United States District Court for the Northern District of California seeking to enjoin the arbitral proceedings and a declaratory judgment that they are not subject to an arbitration agreement with Criden & Love and that they are not liable to Criden & Love for the purported referral fee agreement. (ECF No. 1 at ¶ 31.) The district court there denied Criden & Love's motion to dismiss on jurisdictional grounds, and the motion for preliminary injunction became moot after the arbitration was dismissed in July 2014. (*Id.* at ¶ 32.) Following discovery, plaintiffs moved for summary judgment on their declaratory judgment claims. By Memorandum Opinion and Order dated March 9, 2015, Magistrate Judge Elizabeth Laporte granted plaintiffs' Motion on their own claims and on Criden & Love's counterclaims.[2] N.D. Cal. Op., 2015 WL

---

[2] The parties consented to Magistrate Judge Laporte's jurisdiction pursuant to 28 U.S.C. § 636. (ECF No. 14 at ¶ 68.)

1029364. Although the court there doubted even the existence of an enforceable referral fee

agreement between the Saveri plaintiffs and Criden & Love, the court's decision was based

on the fact that the purported agreement violated the Rules of Professional Conduct of the

California and Florida bars, as well as the Local Rules of the Northern District of California,

all of which require that a client provide written consent to any fee sharing agreement. *Id.*

In reaching this conclusion, Judge Laporte noted that:

> "**Isaac Industries was Lieff Cabraser's client**. While Defendant argues that
> Plaintiffs continued to officially represent Isaac Industries after June 1, 2012, it
> is undisputed that after that time, **Plaintiffs "never appeared specifically on
> behalf of Isaac Industries and Plaintiff Saveri Law Firm never entered
> into a fee agreement with Isaac Industries**." (Saveri Decl. ¶¶ 1011.) For
> the settlement, Defendant "Criden and Lieff Cabraser (not [Plaintiff Saveri] or
> personnel at [Plaintiff] Joseph Saveri Law Firm) conferred with Isaac
> Industries to advise [it] regarding the proposed settlement ... and Vincent
> Esades of Heins—with [Plaintiff Saveri's] input—advised [their] client Breen
> on the same subject."

N.D. Cal Op., 2015 WL 1029364, at *6 (emphasis added). Because Saveri's client, East

Coast Colorants, LLC d/b/a Breen Color Concentrates ("Breen"), did not give written

consent to the purported referral fee agreement, it would be unenforceable as a matter of

public policy even if Criden & Love were otherwise able to prove its entitlement thereto.

Thus, the Court granted summary judgment in favor of Saveri and his firm.

Criden & Love appealed the district court's judgment. On June 2, 2017, the Ninth

Circuit reversed and remanded Judge Laporte's order denying Criden & Love's Motion to

Dismiss, concluding that the district court did not have personal jurisdiction over Criden &

Love. *Joseph Saveri Law Firm, Inc. v. Criden*, No. 15-15534, --- Fed. App'x ---, 2017 WL

2406736 (9th Cir. June 2, 2017). The Ninth Circuit did not discuss Judge Laporte's ruling on

the merits of the case. Pursuant to the Ninth Circuit's judgment, the district court subsequently dismissed the case.

On June 12, 2017, plaintiffs filed their Complaint in this Court. (ECF No. 1.) The relief sought is essential the same as that requested in the Northern District of California, and the parties' papers rely extensively on discovery undertaken during that litigation. On July 19, 2017, Criden & Love answered and asserted a series of Counterclaims. (ECF No. 14.) Plaintiffs answered the Counterclaims on August 9, 2017. (ECF No. 24.)

On July 14, 2017, plaintiffs filed the now-pending Motion for Summary Judgment (ECF No. 13), and the matter became fully ripe for this Court's resolution on August 25, 2017. At a Motions Hearing conducted on August 31, 2017, the parties agreed that this Court is the proper forum for resolution of this dispute.[3] (ECF No. 31, Aug. 31 Hrg. 11:20 a.m.) ECF No. 31.) It was also agreed that the facts of this case were developed fully in the Northern District of California case and that no additional discovery is required. (*Id.* at 11:19 a.m.) Finally, the parties agreed that by virtue of their *pro hac vice* appearances before this Court in the underlying TiO2 litigation, they agreed to be bound by the rules of this Court, including, the Maryland Rules of Professional Conduct.[4] (*Id.* at 11:20 a.m.)

---

[3] As the parties agree that this Court is the proper forum for the resolution of this dispute, plaintiffs' First Claim for Relief, a declaration that they are not subject to arbitration or any other proceeding, is moot. Accordingly, Count I of plaintiffs' Complaint shall be WITHDRAWN AS MOOT.

[4] Although the parties are also subject to codes of professional conduct under the laws of California (the Saveri plaintiffs) and Florida (Criden & Love and its attorneys), their conduct in this case, including in the creation of any purported referral agreements, is subject to Maryland's professional responsibility rules.

## FACTUAL BACKGROUND

The pertinent factual background is set forth in the March 9, 2015 Memorandum

Opinion of Magistrate Judge Elizabeth Laporte of the United States District Court for the

Northern District of California. N.D. Cal. Op., 2015 WL 1029364 (N.D. Cal. Mar. 9, 2015).[5]

> Plaintiff Joseph Saveri ("Plaintiff Saveri") is a former partner at Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"). (Saveri Decl. ¶ 1.) In June 2012, Plaintiff Saveri left Lieff Cabraser and founded Plaintiff Joseph Saveri Law Firm, Inc. ("Plaintiff Saveri Law Firm"). (*Id.*¶ 9.)
>
> In February 2010, while Plaintiff Saveri was still a partner at Lieff Cabraser, that firm entered into a referral agreement with Defendant and Counterclaimant Michael E. Criden, P.A. d/b/a Criden & Love, P.A. ("Defendant Criden" or "Defendant"), a Florida law firm. Through that agreement, Defendant Criden referred a client, Isaac Industries, Inc. ("Isaac Industries"), to Lieff Crabraser so that it could represent Isaac Industries in *In re Titanium [Dioxide] Antitrust Litigation,* No. 10–cv–318 (D. Md.) ("TiO2 litigation"). In exchange, Lieff Cabraser agreed to pay Defendant a referral fee of 12.5 percent of any fees it received in the TiO2 litigation. (Love Decl. Ex. B.; Saveri Decl. ¶ 3.) The agreement states that:

>> [Lieff Cabraser] agrees to pay [Defendant] a referral fee of 12.5% (Twelve and One Half Percent) of its fees, including any multiples on hours that it receives in this matter ("Total Fees"). Total fees does not include any monies received for reimbursement of expenses. Lieff Cabraser agrees to pay the referral fee to [Defendant] even if Lieff Cabraser later procures another client in this matter. If Lieff Cabraser receives significantly less than its lodestar in the case, [Defendant] agrees to discuss in good faith a reasonable accommodation to the amount of the referral fee.

>> Both law firms agree that all disputes related to or arising from this referral agreement shall be resolved by arbitration conducted by the American Arbitration Association ("AAA").

> (Love Decl. Ex. B.) Although Mr. Fastiff of Lieff Cabraser communicated acceptance of the agreement to Defendant Criden on behalf of the firm, Plaintiff Saveri was aware of the arrangement. (Love Decl. Ex. G.)

---

[5] Citations in this section are to the record before the United States District Court for the Northern District of California, unless otherwise noted.

On February 12, 2010, Isaac Industries filed a complaint alleging a conspiracy to fix prices of titanium dioxide in the United States District Court for the District of Maryland. (Love Decl. ¶ 10.) That case was subsequently consolidated with a similar case, brought by Haley Paint Company, into the TiO2 litigation. (Saveri Decl. ¶ 7.) Plaintiff Saveri was admitted *pro hac vice* in the TiO2 litigation on behalf of Haley Paint Company and Isaac Industries. (*See* Saveri Decl. ¶ 7, Ex. 4.) On April 1, 2011, Lieff Cabraser and Gold Bennett Cera & Sidener, LLP ("Gold Bennett") were appointed as co-lead counsel. (Love Decl. ¶ 12.) On July 29, 2011, the TiO2 court granted a stipulation adding East Coast Colorants LLC d/b/a Breen Color Concentrates ("Breen") as a plaintiff. (Saveri Decl. ¶ 9.)

In May 2012, Plaintiff Saveri informed Mr. Love of Defendant Criden that he would be leaving Lieff Cabraser. (Love Decl. ¶¶ 14–15.) According to Mr. Love:

> [Plaintiff Saveri] said that he would want to enter appearances on behalf of, you know, clients that I'd given Lieff [Cabraser], and I said sure. And I said, you know, that we would expect you to respect the referral obligation that Lieff [Cabraser] had agreed to…. [Plaintiff Saveri] didn't say yes … but, you know, he didn't say no, what are you talking about or are you crazy.

(Saveri Decl. Ex. B (Love Depo.) at 188–89; *see also* 5/13/14 Love Decl. ¶ 35 ("In May 2012, Saveri called me to tell me that he was leaving Lieff Cabraser to start his own law firm, and wanted to know whether Saveri, at his new law firm, could continue to represent Isaac Industries in the TIO2 litigation, and another C & L client in a different litigation. I responded that C & L was fine with him making his appearances so long as his new firm paid C & L the same referral fee that Lieff Cabraser agreed to in those cases."); 1/20/15 Love Decl. ¶¶ 15–16 ("Saveri told me that he was leaving Lieff Cabraser to start a new law firm and that he intended to file a motion to appoint himself as a third lead counsel in the TIO2 Action representing Isaac Industries. I then told Saveri that if he moved to become the third lead counsel while representing Isaac Industries, [Defendant Criden] would expect Saveri to pay [Defendant Criden] a 12.5% referral fee.").) Plaintiff Saveri testified that he told Mr. Love that:

> I intended to continue to operate at the highest level of the case to continue to work as lead counsel…. [Mr. Love said] I expect or I want you to pay the 12 and a half percent referral obligation…. I said that I wanted to continue to—to do as I had in the past with the structure that we had. So I—I don't recall specifically saying I want to represent Isaac Industries…. [W]e had a leadership structure that prior to my—when I was at Lieff Cabraser, it was a co-lead structure with Gold Bennett as one

lead, Lieff Cabraser, me as the other, Shapiro Sher as a liaison counsel.... That was the team that had been working on the case, and I wanted to continue that in the future.

(Supp. Love Decl Ex. B (Saveri Depo.) at 148–51; *see also* Saveri Decl. ¶ 12 ("At the time, I did not agree that the Joseph Saveri Law Firm or I would pay a referral fee or be bound—or intended to be bound—by Lieff Cabraser's agreement with Criden with respect to the referral of Isaac Industries.").)

On June 1, 2012, Plaintiff entered an appearance in the TiO2 litigation on behalf of Breen. (Saveri Decl. ¶ 9, Ex. 4.) Defendant Criden did not represent Breen and did not refer Breen as a client to either Plaintiff Saveri Law Firm or Hines Mills & Olson, the other law firm that represented Breen in the TiO2 litigation. (Saveri Decl. ¶ 9.) Although this notice of appearance was docketed on ECF, Defendant Criden states that it did not review the document when it received notice of its filing. (Love Decl. ¶ 20.)

Plaintiff Saveri did not withdraw his appearance on behalf of Isaac Industries (Love Decl. ¶ 23), and did not specifically inform Isaac Industries that he was departing from Lieff Cabraser. Rather, he "filed a notice ... that [he] had opened [his] own firm and was appearing on behalf of a separate client." (Supp. Love Decl. Ex. B. (Saveri Depo.) at 168–169.) After June 1, 2012, Plaintiff Saveri never appeared specifically on behalf of Isaac Industries and Plaintiff Saveri Law Firm never entered into a fee agreement with Isaac Industries. (Saveri Decl. ¶¶ 10–11.) Similarly, after June 1, 2012, Plaintiffs never advised or reported to Isaac Industries as counsel, and never received instructions from Isaac Industries as a client. (*Id.* ¶ 13.) However, a June 29, 2012 *pro hac vice* application in the TiO2 litigation for Kevin Rayhill of Plaintiff Saveri Law Firm lists Mr. Rayhill "as counsel for Plaintiffs Haley Paint Company, *Isaac Industries, Inc.,* and [Breen]," and a July 25, 2012 *pro hac vice* application for Lisa J. Leebove of Plaintiff Saveri Law Firm lists Ms. Leebove as counsel for "Plaintiffs." (Supp. Love Decl. Exs. J, K (emphasis added).)

On August 7, 2012, Plaintiff Saveri Law Firm was added as co-lead class counsel in the TiO2 litigation. (Saveri Decl. Ex. 6.) The next day, Mr. Love of Defendant Criden sent Plaintiff Saveri an e-mail stating that:

I saw that you applied to be co-lead in TIO2. Thats good news. Please confirm that you will by paying my firm a referral fee of 12.5% (the same Lieff agreed to pay us in this case.) Thanks.

(Saveri Decl. Ex. 11.) Plaintiff Saveri did not respond to this e-mail. (Love Decl. ¶ 43.)

In the Fall of 2013, the district court approved a settlement of the TiO2 litigation that awarded $54.5 million in attorneys' fees. (Saveri Decl. ¶ 19.) Defendant Criden received a total of $2,758,422.75 from the litigation, including $917,177.01 in referral fees from Lieff Cabraser. (Mot. at 11.) Plaintiff Saveri Law Firm received approximately $10 million. (Opp. at 9.)

On October 23, 2013, Mr. Love sent Plaintiff Saveri another e-mail that stated that:

Michael [Criden] and I want to congratulate you on achieving such a tremendous result in the TIO2 case. As is our practice, I just wanted to remind you of your firm's 12.5% referral obligation, per our February 2010 agreement. I look forward to working with you on some new matters.

(Saveri Decl. Ex. 12.) Plaintiff Saveri did not respond to this e-mail. (Love Decl. ¶ 45.)

N.D. Cal. Op., 2015 WL 1029364 at * 1-3.

While not mentioned in Judge Laporte's opinion, this Court notes that plaintiff Joseph Saveri's Declaration in Support of Plaintiffs' Motion for an Award of Attorney's Fees filed in the underlying TiO2 litigation "does not include any of the work that [Saveri] or others performed while [Saveri] was working at [Lieff Cabraser]. It only includes work performed by the Joseph Saveri Law Firm." (RDB-10-318, ECF No. 546-5 at ¶ 4.) Thus, Criden & Love already has received a percentage of attorney's fees awarded to Lieff Cabraser based on work performed by Mr. Saveri. This Court also notes that attorney Kevin Love's fee request makes no mention of the fact that Criden & Love stood to receive over $1.7 million in referral fees from Lieff Cabraser and from Berger and Montague. (RDB-10-318, ECF No. 546-13.) That is, Criden & Love has received in referral fees twice as much money as it was awarded by this Court for work performed in this case. During the August 31, 2017 motions hearing, Mr. Love, in response to a question from the Court, acknowledged

on the record that approximately 50% of Criden & Love's revenues from its practice are from such "brokering" of cases.  (ECF No. 31, Aug. 31 Hrg. 11:39 a.m.)

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot

create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

### I. The Saveri Plaintiffs Are Not Bound by Criden & Love's Referral Agreement with Lieff Cabraser, Saveri's Former Law Firm

To the extent that Criden & Love seeks to bind Saveri, a former limited liability partner of Lieff Cabraser, based on its referral fee agreement with that firm, this argument fails under basis principles of corporate law—specifically, the fact that "[u]nder California law, '[a] partner in a registered limited liability partnership is not liable ... for debts, obligations, or liabilities ... of ... the partnership.'" N.D. Cal Op., 2015 WL 1029364, at *7 (N.D. Cal. Mar. 9, 2015) (quoting Cal. Corp. Code § 16306(c)). Moreover, Criden & Love twice admits in its Answer that the Saveri plaintiffs are not party to the Criden & Love referral agreement with Lieff Cabraser. (ECF No. 14 at ¶¶ 28, 38.) Finally, Criden & Love is unable to point to any express referral fee agreement with Saveri or his firm. Accordingly, the Saveri plaintiffs are not bound by Criden & Love's express agreement with Lieff Cabraser.

### II. Saveri's Failure to Strike His Appearance on Behalf of Isaac Industries Did Not Create an Implied-in-Fact Contract with Criden & Love

Alternatively, Criden & Love asserts that Saveri adopted and agreed to be bound by the terms of the Lieff Cabraser referral agreement (1) by not withdrawing his appearance on behalf of Isaac Industries during the litigation, and (2) by representing to this Court that Criden & Love, among other class counsel, supported Saveri's request to be appointed as

Interim Co-Lead Class Counsel—a condition which Saveri allegedly knew to depend on his accepting Criden & Love's 12.5% referral fee demand. (ECF No. 14 at ¶¶ 34-48.)

With respect to Saveri's purported continuing representation of Criden & Love's client Isaac Industries, the undisputed facts of this case are that Saveri had little, if any, contact with Isaac following Breen's entry into the case. As Judge Laporte noted (and as remains the fact before this Court):

> "**Isaac Industries was Lieff Cabraser's client**. While Defendant argues that Plaintiffs continued to officially represent Isaac Industries after June 1, 2012, it is undisputed that after that time, **Plaintiffs "never appeared specifically on behalf of Isaac Industries and Plaintiff Saveri Law Firm never entered into a fee agreement with Isaac Industries**." (Saveri Decl. ¶¶ 1011.) For the settlement, Defendant "Criden and Lieff Cabraser (not [Plaintiff Saveri] or personnel at [Plaintiff] Joseph Saveri Law Firm) conferred with Isaac Industries to advise [it] regarding the proposed settlement ... and Vincent Esades of Heins—with [Plaintiff Saveri's] input—advised [their] client Breen on the same subject." (*Id.* ¶ 17.)"

N.D. Cal. Op., 2015 WL 1029364, at *6 (emphasis added) (references in original). Thus, while Lieff Cabraser's involvement in the case may be traceable to Criden & Love's referral, it does not follow that Saveri, bringing his own client into the case following his departure from Lieff Cabraser, continued to represent Isaac in any objectively meaningful way—that is, beyond his unstricken appearance—after that point. To the contrary, Isaac Industries continued to be represented by capable counsel in Lieff Cabraser, which was awarded over $10 million in attorney's fees based on its work in the case. (RDB-10-318, ECF No. 546-3.) And it is undisputed that Lieff Cabraser paid to Criden & Love the referral fee—over $900,000—which it had agreed to pay. (ECF No. 14 at ¶ 25.) The Saveri plaintiffs' unstricken appearance does not subject them to the terms of Criden & Love's agreement with Lieff Cabraser and in no way gives rise to the type of fraud alleged by Criden & Love.

Similarly, there is no basis on which to impute the terms of the Lieff Cabraser referral agreement onto the Saveri plaintiffs based on their motion for appointment as Interim Co-Lead Class Counsel. While Criden & Love now, five years after the fact, asserts that it would not have consented to Saveri's appointment had they known that he did not accept its referral fee demand, this *post hac* assertion does not establish the existence of an agreement by Saveri and, moreover, assumes, without producing any evidence—as surely Criden & Love could not—that this Court would not have appointed Saveri, the capable attorney who was, perhaps, most familiar with the case, as Co-Lead Counsel. This argument is similarly unavailing. Accordingly, the Saveri plaintiffs' failure to strike their appearance on behalf of Isaac Industries did not create an implied-in-fact contract with Criden & Love, and the Saveri plaintiffs are entitled to summary judgment on their Second Claim for Relief and on Criden & Love's first (Contract Implied in Fact) and fifth (Fraud) counterclaims.

III.    **Love's Declaration Regarding the May 2012 Telephone Call With Saveri Does Not Raise a Genuine Issue of Material Fact**

Criden & Love argue that Saveri orally agreed to pay it a referral fee during the May 16, 2012 telephone call between Saveri and Love. (ECF No. 28 at ¶¶ 24-26.) While the parties do not dispute that Saveri and Love spoke by telephone on that date, Love states in his declaration that he told Saveri that "if [Saveri] moved to become the third lead counsel while representing Isaac Industries, C&L would expect Saveri to pay C&L a 12.5% referral fee." (*Id.*) Saveri points to evidence indicating that he did not agree during that conversation to be bound by the terms of the Lieff Cabraser agreement with Criden & Love. (ECF No. 13 at 17.)

Although Criden & Love asserts that this dispute creates a genuine issue of material fact which cannot be decided on summary judgment, the only evidence which it offers in support of its position is Love's Declaration. (ECF No. 28.) It is well established, however, that a self-serving declaration does not create a genuine issue of material fact so as to avoid summary judgment. *Bowman v. Baltimore City Bd. of Sch. Commissioners*, RDB-15-1282, 2017 WL 3457707, at *5 (D. Md. Aug. 11, 2017) (citing *National Enterprises, Inc. v. Barnes*, 201 F3d 331, 335 (4th Cir. 2000)). Thus, absent any additional proof that Saveri agreed to pay the proposed referral fee, Love's declaration does not create a genuine issue of material fact which would allow Criden & Love to avoid summary judgment on the Saveri plaintiffs' Second Claim for Relief and on Criden & Love's first (Contract Implied in Fact) and fifth (Fraud) counterclaims.

## IV. Criden & Love's 'Confirmation' Messages Were Merely Offers Which Did Not Create an Enforceable Agreement

Criden & Love argues that its 'confirmation' emails to Joseph Saveri in August 2012 and October 2013 created an implied-in-fact contract. However, the undisputed evidence before this Court indicates that on the two occasions when Criden & Love tried to form a referral fee agreement with Saveri and his firm, Saveri never responded to Criden & Love's offers. (ECF No. 28 at ¶¶ 54-58.)

On August 8, 2012 and October 23, 2013, Kevin Love of Criden & Love sent to Joseph Saveri self-styled 'confirmation' emails purportedly seeking to confirm that Saveri would pay Criden & Love a referral fee. (ECF No. 28 at ¶¶ 54-58.) While the 'confirmation' structure of Criden & Love's messages appears to suggest that an agreement has already been formed, the record contains no evidence of any express agreement between the parties

that existed prior to the sending of Criden & Love's 'confirmation' emails. (ECF No. 31, Aug. 31 Hrg. 11:27-11:28 a.m.) Thus, within the context of contract formation, Criden & Love's messages amount only to an offer—an offer to which Saveri never responded.

Under Maryland law, "[s]ilence is generally not to be considered an acceptance of an offer unless the parties had agreed previously that silence would be an acceptance, the offeree has taken the benefit of the offer, or because of previous dealings between the parties, it is reasonable that the offeree should notify the offeror if she does not intend to accept." *Cochran v. Norkunas*, 398 Md. 1, 23–24, 919 A.2d 700, 714 (2007). Here, there is no evidence that the parties understood, based on prior dealings or an agreement between them, that Saveri's silence would serve as an acceptance of Criden & Love's offer. To the contrary, Lieff Cabraser had accepted Criden & Love's referral agreement offer by the sending of an affirmative response. (ECF No. 28 at ¶ 16.) Nor can it be said that Saveri, who brought his own client, Breen, into the TiO2 litigation took the benefit of Criden & Love's offer. Thus, Saveri's silence does not amount to an acceptance giving rise to a contractual duty as a matter of law, and the Saveri plaintiffs are entitled to summary judgment on their Second Claim for Relief and on Criden & Love's first (Contract Implied in Fact) and fifth (Fraud) counterclaims.[6]

## V. Criden & Love Is Not Entitled to Equitable Relief

Criden & Love also invokes equitable principles in support of its claim for referral fees, asserting that it would be unjust for the Saveri plaintiffs to retain the benefit of its

---

[6] This Court further notes that the very fact that Criden & Love made two such offers—both of which were met with silence from Saveri—suggests that Criden & Love understood that no agreement had been reached. That is, the subsequent 'confirmation' email on which Criden & Love now relies as the basis for the purported contract would have been gratuitous if Criden & Love understood that one of its prior offers (whether written, oral, or by the 'confirmation' email) had been accepted and was enforceable.

having procured Isaac Industries as a plaintiff in the TiO2 litigation. As this Court made clear on the record during the August 31 motions hearing, however, the equities in this case clearly do not favor Criden & Love.

First, following his departure from Lieff Cabraser, Saveri no longer represented Isaac Industries on an individual basis, but came to the litigation with a new plaintiff, Breen. Thus, it cannot be said that Saveri unfairly benefitted from Criden & Love's attorney-client relationship with Isaac Industries, and Criden & Love's unjust enrichment and 'money had and received' claims are without merit. Second, the parties' requests for attorney's fees and costs in the TiO2 litigation reflect that Saveri and his firm performed significantly more and significantly more demanding tasks in the case. Specifically, while Criden & Love reported a total of 1,779 hours of work (over 80% of which was done by associates), the Saveri Law Firm performed 6,425 hours of work, including 2,200 hours by Joseph Saveri himself. (RDB-10-318, ECF Nos. 546-5, 546-13.) Criden & Love's quantum meruit claim thus falls flat. Third, the same submissions reflect that Saveri and his firm incurred far more expenses than Criden & Love and, therefore, subjected themselves to far greater risks in the litigation. That is, while the Saveri Law Firm requested reimbursement for $434,266.82 in expenses, Criden & Love sought only $38,398.18 (less than one-tenth as much). (RDB-10-318, ECF No. 546-3.) Fourth, as noted above, to the extent that Criden & Love has already received over $900,000 in referral fees from Lieff Cabraser which was based, in part, on work performed by Saveri while still working at that firm, it can hardly be said that equity entitles Criden & Love to another 'bite' of Saveri's hard-earned fees. (RDB-10-318, ECF Nos. 546-5.) Fifth, as discussed below, the fact that the relief which Criden & Love seeks is prohibited

under the professional ethics rules of Maryland, California, and Florida hardly tips the scales

of equity in its favor.  To the contrary, the doctrine of unclean hands alone could suffice to

bar its claims in equity.  Finally, any consideration of the equities of this case cannot ignore

that Criden & Love never disclosed to this Court the fact that it stood to receive in the form

of referral fees approximately twice the amount which it requested as an award of attorney's

fees.  *See* RDB-10-318, ECF No. 546.  In sum, equity does not favor Criden & Love.  Thus,

the Saveri plaintiffs are entitled to summary judgment on Criden & Love's Second (Money

Had and Received), Third (Unjust Enrichment), and Fourth (Quantum Meruit)

counterclaims.

VI.    **Even if Criden & Love Were Able to Prove the Existence of an Express or Implied Contract, the Purported Agreement Is Unenforceable Because It Violates the Maryland Rules of Professional Conduct**

Even if Criden & Love were able to establish the existence of an agreement between

it and the Saveri plaintiffs or its entitlement to a referral fee under equitable principles, the

Maryland Rules of Professional Conduct prohibit the relief which it now seeks.  During the

August 31 motions hearing, the parties agreed that they are bound by Maryland's ethical

rules based on their *pro hac vice* admissions in this Court.  While this Court thus applies the

Maryland Rules of Professional Conduct to the instant analysis based on the parties' having

agreed to be bound by these rules, it is notable that the rules of professional conduct of

California and Florida similarly would prohibit Criden & Love from enforcing the purported

referral fee agreement.  *See* N.D. Cal. Op., 2015 WL 1029364 at * 4-7 (discussing California

Rule of Professional Conduct 2-200 and Florida State Bar Rule 4–1.5(G)).

Maryland Rule of Professional Conduct 19-301.5(e), which governs attorney fee-sharing agreements, provides, in pertinent part, that:

> (e) A division of a fee between attorneys who are not in the same firm may be made only if:
>
>> (1) the division is in proportion to the services performed by each attorney or each attorney assumes joint responsibility for the representation;
>>
>> (2) the client agrees to the joint representation and the agreement is confirmed in writing; and
>>
>> (3) the total fee is reasonable.

Md. Rule of Professional Conduct 19-301.5. The flat 12.5% referral fee sought by Criden & Love on its face violates the proportionality requirement of § 19-301.5(1). Moreover, as it is undisputed that Saveri's client Breen did not agree in writing that a referral fee would be paid to Criden & Love, the agreement which Criden & Love now seeks to enforce would also be unenforceable under § 19-301.5(2). Although Criden & Love argues that its client, Isaac Industries, consented to the referral fee agreement, this has no bearing on the fact that Saveri's client, Breen, did not consent in writing to the purported agreement, as the Maryland Rules require. Thus, even if Criden & Love were able to prove the existence of a referral fee agreement, the relief which Criden & Love seeks is unenforceable as a matter of public policy. Accordingly, the rules of professional conduct provide an alternative basis on which the Saveri plaintiffs entitled to summary judgment on their Second Claim for Relief and on Criden & Love's counterclaims.

In sum, there are no genuine issues of material fact for a jury to decide, and plaintiffs Joseph Saveri and the Saveri Law Firm are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment (ECF No. 13) is GRANTED, and and Declaratory Judgment shall be ENTERED in favor of plaintiffs Joseph Saveri and the Joseph Saveri Law Firm, Inc. on all claims and counterclaims. The Saveri plaintiffs are not obligated to pay any referral fee to Criden & Love.

A separate Order follows.


Dated: September 7, 2017 _____/s/_____
Richard D. Bennett
United States District Judge